Below is an opinion of the court.

_____
DAVID W. HERCHER
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| In re | Chapter 13 |
|---|---|
| **Jerome A. Smith** and **Valerie M. Smith**, | Case No. 19-30059-dwh13 |
| Debtors. | MEMORANDUM DECISION RE SECURED CREDITOR DEERE & COMPANY'S MOTION TO HAVE COURT DETERMINE FEES |
| | NOT FOR PUBLICATION |

**I.     Introduction**

Deere & Co. has moved for a determination that its claim includes attorney and appraisal fees of $6,848.50 and directing debtors, Jerome A. Smith and Valerie M. Smith, to pay the fees.

For the reasons that follow, I find that Deere's claim includes fees of $5,683, which must be paid as part of Deere's secured claim in the manner required by the chapter 13 plan.

## II. Facts

### A. *Plan*

The Smiths' plan was confirmed on May 13, 2019.[1] It sets Deere's claim as of the petition date at $54,966.90 and requires payments "outside the plan" in a fixed monthly amount, with annual interest of 7.5 percent "from the time of filing to the time of plan confirmation, and thereafter." The claim balance must be paid by January 31, 2023, which is also the deadline to sell or refinance specified real property. Deere "may apply to the court for attorney fees, and the court shall make the determination thereof."

### B. *Deere's fee claim*

On May 20, 2019, Deere filed its first Notice of Intent to Have Trustee Pay Fees.[2] On June 10, the Smiths filed their objection to the first notice.[3]

On July 16, Deere filed its second notice of intent to have the trustee pay its fees[4] and its Motion to Have Court Determine Fees.[5] The total amount sought in the motion, $6,848.50, is the sum of lawyer fees of $5,967.50, $700 as the cost of an appraisal, and other costs of $181.

On July 22, I denied the first notice without determining the reasonableness of the requested fees or precluding Deere from seeking fee approval (or ruling on the motion).[6]

On August 6, the Smiths filed their objection to the second notice.[7]

---

[1] Docket item (DI) 44.
[2] DI 46.
[3] DI 48.
[4] DI 54.
[5] DI 55.
[6] DI 56.
[7] DI 62.

On September 17, the Smiths filed their second objection to the second notice.[8] On October 3, Deere filed its response to their objection to the motion.[9] The parties agreed to submit the motion for my decision based on the briefs.

**III.   Discussion**

   *A.   Statutes*

Under 11 U.S.C. § 506(a),[10] a creditor's allowed claim secured by estate property is a secured claim to the extent of the value of the creditor's interest in the estate's interest in the property and otherwise an unsecured claim. Under section 506(b), to the extent that a claim is over-secured—its collateral is worth more than its claim—the claim includes interest on the claim and any reasonable fees, costs, or charges provided for under the agreement under which the claim arose.

Under section 1325(a)(5)(B)(ii), a condition of confirmation of a chapter 13 plan is that the value, as of the plan's effective date, of property to be distributed under the plan on account of the claim is not less than the allowed amount of such claim. In other words, a plan proposing to pay a secured claim over time must propose payment of an appropriate rate of interest.

   *B.   Issues*

The parties agree that Deere is entitled to reasonable attorney fees because its claim is oversecured (and, implicitly, because it has a contractual right to fees). They also agree that $5,683 is the limit of Deere's fees.[11] Their disputes are limited to the reasonableness of certain fee items and the timing and manner of the payment of any allowed fees.

---

[8] DI 67.
[9] DI 70.
[10] Other section references are also to sections of title 11.
[11] DI 70 at 7.

Page 3 –   MEMORANDUM DECISION RE SECURED CREDITOR DEERE & COMPANY'S
             MOTION TO HAVE COURT DETERMINE FEES

## C. Fee reasonableness

The Smiths challenge Deere's fees for three categories of services: (1) the stay-relief motion that Deere filed on February 7, 2019, and related items; (2) the appraisal of Deere's collateral; and (3) the continuation of negotiation after Deere's management allegedly revoked an agreement for the resolution of Deere's confirmation objection.

### 1. Stay relief

The Smiths argue that Deere's motion for relief from stay was unnecessary because it already had a pending plan-confirmation objection that raised the same issues.[12] Deere responds that the stay-relief motion was justified because Deere reasonably feared that its collateral was not fully accounted for, might be missing, might not be insured, and was not necessary to the Smiths' reorganization. The challenged fees amount to $852.50 spread over a month.

I don't agree that the motion raised only issues that had already been raised in the confirmation objection. Nor would that necessarily make the motion unjustified even if it were true. A creditor can't get relief from the automatic stay by objecting to confirmation. If Deere believed itself entitled to stay relief, it had to file the motion.

It's true that Deere ultimately persuaded the Smiths to agree that it was over-, rather than undersecured. But I can't say that Deere was unreasonable in taking the precaution of filing its motion based on the belief that some of its collateral was absent or uninsured—which was plausible given what Deere knew at the time. And, given the relatively modest amount of the fees in comparison to the size of the claim, the fees were reasonable.

---

[12] DI 67 at 1.

## 2. Appraisal

The Smiths argue that Deere incurred unjustified fees between February 25 and April 16, 2019, relating to a dispute about the value of Deere's collateral.[13] The core of their argument is that Deere wasted time by hiring "an admittedly unqualified appraiser ([Ron] Keyser)" and not hiring a "qualified appraiser" until much later.[14] They then argue that essentially everything that Deere's counsel did relating to the valuation dispute before hiring the new appraiser was not cost-justified.[15]

Deere does not admit that Keyser was unqualified. It says only that, after providing Deere with information about the collateral's value, Keyser later told Deere that his employer would not allow him to testify about the value of the equipment. Deere also argues that it did make some use of Keyser's information, specifically by "us[ing] his analysis to try to convince debtors' counsel that there was equity," i.e., that Deere was oversecured.[16]

Even if Deere had known all along that Keyser's valuation would not be usable as evidence—which Deere does not admit and which does not appear to be true—it would not follow that the fees should be disallowed for that reason alone. Information about the facts in dispute (such as the collateral's value) is useful to a secured creditor even if it comes in a form that can't be used as evidence. If Keyser had told Deere that the equipment really was worth as little as the Smiths believed, Deere might have decided that its position was untenable and taken a different approach. Instead, Keyser apparently confirmed Deere's view that there was equity in

---

[13] DI 67 at 2.
[14] *Id.*
[15] *Id.*
[16] DI 70 at 4.

Page 5 –   MEMORANDUM DECISION RE SECURED CREDITOR DEERE & COMPANY'S
          MOTION TO HAVE COURT DETERMINE FEES

the equipment and armed Deere with information that it could use to try to convince the Smiths that its position was justified.

Based on the information I have, I can't conclude that Deere's dealings with Keyser were not cost-justified—even if I assume, contrary to appearances, that Deere knew all along that Keyser would refuse to testify.

Eventually, Deere hired a different appraiser, Greg Duff.[17] Deere's fee itemization suggests that it hired Duff in the expectation that it would need an expert witness for the confirmation hearing.[18] Before Deere and the Smiths managed to settle its confirmation objection, it was sensible for Deere to prepare for a contested hearing at which it would have to present expert testimony to support its position on the value of the collateral. Knowing that Keyser was unwilling or unable to testify, Deere acted reasonably in hiring another appraiser. It doesn't follow that the decision to hire Keyser in the first place was unreasonable or unjustified.

According to the itemization, about two weeks elapsed between Keyser's refusal to testify and Deere's decision to hire another appraiser, and another month went by before Deere hired Duff.[19] The itemization shows that Deere's lawyer was then exchanging information with Deere and the Smiths' lawyer. It's possible that the settlement would have been reached sooner if Deere had hired a new appraiser immediately after learning that Keyser would not testify, but it's not obvious that this would have been the result, and I can't conclude that Deere delayed unreasonably. Deere did not receive the Smiths' appraisal report until March 21, 2019[20]—three weeks after Keyser bowed out. Until that time, for all Deere knew, the Smiths' valuation might

---

[17] Claim 10-2 at PDF p. 10.
[18] Claim 10-2 at PDF pp. 9-10.
[19] Claim 10-2 at PDF pp. 8-10.
[20] Claim 10-2 at PDF p. 9.

Page 6 –    MEMORANDUM DECISION RE SECURED CREDITOR DEERE & COMPANY'S
            MOTION TO HAVE COURT DETERMINE FEES

have turned out to be so close to Keyser's that the parties could reach agreement without another appraisal.

I grant that Deere could have saved time and fees by hiring Duff instead of Keyser from the beginning. But the information I have shows that Deere was acting reasonably based on what it knew at the time and making reasonable adjustments to its strategy as new information came to its attention.

The total fee amount in this category, $1,072.50, is again modest in comparison to the size of the claim and is reasonable.

### 3. Revocation of "agreement"

Finally, the Smiths complain that "Deere headquarters" revoked a "final, agreed settlement" that the parties' lawyers had reached on April 29.[21] They argue that Deere should not recover the $247.50 it requests for the "revocation and renegotiation."[22]

Because the Smiths never argued that Deere was bound by the supposedly final agreement of April 29, I interpret their argument to mean that Deere's lawyer did not have Deere's final approval of the settlement and that Deere ultimately rejected it. If so, the "revocation and renegotiation" was really just the final step in the negotiation of the settlement that the parties finally incorporated into the confirmation order. It's a litigant's prerogative to reject an agreement that its lawyer recommends and to continue the negotiation until an acceptable agreement is reached. Deere argues without contradiction that the final agreement was more favorable to it than the version it rejected.

---

[21] DI 67 at 2.
[22] *Id.*

Page 7 –   MEMORANDUM DECISION RE SECURED CREDITOR DEERE & COMPANY'S
MOTION TO HAVE COURT DETERMINE FEES

I can't deem the $247.50 in fees inherently unreasonable just because they were incurred after the lawyers had reached what they thought was a final agreement. There is no rule that the negotiating process must stop at that point or that fees incurred in further negotiations are automatically unreasonable. And the Smiths don't point to any specific facts that would justify a finding that the final round of negotiation was any less reasonable than any other part of the process.

    **4.**  **Reasonable fee amount**

For all of the foregoing reasons, I find that the entire amount of the requested fees—$6,848.50—is reasonable. That the total fee amount is not out of proportion to the total amount of the claim, $54,966.90 on the petition date, supports my conclusion that Deere's lawyer has exercised good billing judgment and has not charged fees that would have seemed excessive to a client that is paying its own lawyer.

Deere has agreed that the fee amount must be reduced to $5,683. That agreement presumably reflects the operation of section 506(b), under which a secured claim includes reasonable fees, but only to the extent the claim is oversecured.

  **D.**  ***Timing of payment of, and interest on, fee claim***

Deere asks that its allowed fees "be paid immediately, or if not immediately, in monthly installments of at least $500 each with interest at 7.5% consistent with the rate set forth in the Order Confirming Plan and Resolving Motions."[23] The Smiths ask that any allowed fees be payable "at the time of the sale/refinance that the confirmed Plan requires in January, 2023, without interest."[24] I decline both requests.

---

[23] DI 70 at 8.
[24] DI 67 at 3.

The plan governs when the Smiths' must pay Deere's claim. Assuming that, even without any fees, some amount of the claim would remain to be paid on the balloon date of January 31, 2023, the practical effect of allowance of any fees is to require fee payment on the balloon date. Deere has suggested no authority for me to require fee payment sooner than the plan requires.

The plan also governs the question of interest. Under the plan, Deere's claim accrues interest at the annual rate of 7.5 percent even after confirmation. The interest accrual was presumably added to accommodate the requirement of section 506(b) that Deere's oversecured claim include postpetition contract-rate interest as of the plan's effective date and the requirement of section 1325(a)(5)(B)(ii) that postconfirmation payments on the secured claim have a value, as of the effective date, equal to the secured claim. In any case, the confirmed plan binds both parties.[25]

Allowance of fees in favor of Deere will result in an increase in the amount of its secured claim as of the date of the allowance order. Under the plan, the increase in the amount of the claim will bear interest at the plan rate from entry of the allowance order. Because interest will accrue automatically under the plan, it is unnecessary for me to separately order payment of interest on the fees.

## IV. Conclusion

Deere's requested fees are reasonable. I will allow the fees at the reduced amount of $5,683.

The fees are part of Deere's secured claim, and the plan governs when the Smiths must pay the entire claim and the accrual of interest on the claim, so I will not separately address those subjects in the fee-allowance order.

---

[25] *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260 (2010).

Page 9 –   MEMORANDUM DECISION RE SECURED CREDITOR DEERE & COMPANY'S
          MOTION TO HAVE COURT DETERMINE FEES

Case 19-30059-dwh13    Doc 75    Filed 01/08/20

I will prepare and enter an order.

# # #